## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:
    JAMES T. PHILLIPS
    AND SHELLY M. PHILLIPS,                                CASE NO. 08-02325-NPO

    DEBTORS.                                                        CHAPTER 7

WHITNEY NATIONAL BANK, SUCCESSOR VIA                PLAINTIFF/
MERGER WITH PARISH NATIONAL BANK                     COUNTERDEFENDANT

V.                                                                          ADV. PROC. NO. 09-00033-NPO

JAMES TODD PHILLIPS                                                  DEFENDANTS/
AND SHELLY M. PHILLIPS                                        COUNTERPLAINTIFFS

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

There came on for consideration the Motion for Summary Judgment on Counterclaim and Affirmative Defenses or, Alternatively, for Partial Summary Judgment / Fed. R. Civ. Proc. 56 (D)(1) Determination (the "Motion") (Adv. Dk. No. 13), the Statement of Material Facts (the "Statement") (Adv. Dk. No. 14), and the Memorandum in Support of Motion for Summary Judgment (the "Memorandum") (Adv. Dk. No. 15) filed by Whitney National Bank, successor via merger with Parish National Bank ("PNB"), in the above-styled adversary proceeding (the "Adversary"). James Todd Phillips and Shelly M. Phillips (the "Debtors") did not file a response to the Motion or the related pleadings. Having reviewed the above-referenced pleadings and other pleadings on file, the Court finds that Debtors lack standing to pursue their Counterclaim.[1] Therefore, PNB is entitled to

---

[1] The Debtors included with their Answer, defined at ¶ 18, certain "Affirmative Defenses" that "mirror or are factually related to the allegations of the Counterclaim." Memorandum at p. 2 and n. 6. "Counterclaim" as used herein includes these "Affirmative Defenses."

a judgment as a matter of law. Accordingly, the Motion should be granted for the reasons set forth below.

## Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and the standing order of reference in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Notice of the Motion was proper under the circumstances.

## Facts

According to the Movant, the following facts established by affidavits are undisputed since the Debtors failed to file a responsive pleading pursuant to Federal Rule of Bankruptcy Procedure 7056(e)(2):[2]

1.  On September 2, 2003, the Debtor executed a number of agreements:

    a. The Debtors entered into a construction loan agreement ("Construction Loan Agreement") to obtain financing to purchase and construct improvements on the real property located at 141 Riverwalk (Lot No. 9), Madisonville, Louisiana (the "Riverwalk Property") (Adv. Dk. No. 14, Exhibit 1). Under the terms of the Construction Loan Agreement, PNB agreed to make loans to the Debtors, on a non-revolving basis, in the aggregate principal amount of $800,000.00, and payable in accordance with promissory notes to be executed by the Debtors in favor of PNB. (Adv. Dk. No. 1, Ex. 1).

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

  b. As security for the loans, the Debtors executed a collateral mortgage note (the "Collateral Mortgage Note"), payable on demand at PNB, in the principal amount of $2,000,000.00, which was secured by an Act of Collateral Mortgage under the terms and provisions of which the Debtors "did mortgage, pledge, affect, and hypothecate" the Riverwalk Property in favor of PNB. (Adv. Dk. No. 14, Ex. 3).

  c. The Debtors also executed a security agreement ("Security Agreement") to secure payment of any and all obligations of the Debtors to PNB "now existing or hereafter arising" by granting "in favor of [PNB] a continuing security interest" in the following described property:

> That certain collateral note in the principal amount of $2,000,000.00, dated September 2, 2003, made by Debtor payable to the order of bearer at Parish National Bank, 404 East Kirkland, Covington, Louisiana, 70433, or at any one of its branches, bearing interest at the rate of eighteen (18.00%) percent per annum from date until paid, paraphed for identification with and secured by an act of collateral mortgage (the "Collateral Mortgage") dated September 2, 2003, executed by Debtor before Martha L. Jumonville, Notary Public, recorded or to be recorded in the Parish of St. Tammany.

(Adv. Dk. No. 14, Ex. 4).

  d. The Debtors also executed a promissory note in the principal amount of $800,000.00 made payable to the order of PNB, pursuant to which PNB lent a total of $800,000.00 to the Debtors to purchase and make improvements upon the Riverwalk Property. (Adv. Dk. No. 14, Ex. 5).

  2. On April 22, 2005, PNB renewed the $800,000.00 loan to the Debtors, which loan renewal was evidenced by a promissory note executed by the Debtors in the principal amount of $800,000.00, dated April 22, 2005, payable to the order of PNB ("Renewal Note 1"), and was secured by the pledge of the Collateral Mortgage Note. (Adv. Dk. No. 14, Ex. 6).

3. On July 14, 2005, the Debtors obtained a second loan from PNB in the amount of $303,000.00, which loan was evidenced by a promissory note in the amount of $303,000.00, dated July 14, 2005, payable to the order of PNB with interest at the initial rate of 6.5% per annum ("Renewal Note 2"). (Adv. Dk. No. 14, Ex. 7).

4. On July 14, 2005, the Debtors also executed an Acknowledgment of Pledge of Collateral and an Acknowledgment of Existing Multiple Indebtedness Mortgage, reaffirming and acknowledging PNB's mortgage on the Riverwalk Property as collateral for and to secure all of the Debtors' present and future indebtedness to PNB, including Renewal Note 2. (Adv. Dk. No. 14, Exs. 8-9).

5. On July 14, 2005, the Debtors also executed a Business Loan Agreement pertaining to Renewal Note 2. (Adv. Dk. No. 14, Ex. 10).

6. On March 5, 2006, PNB sent correspondence to the Debtors reflecting the balance due on the Debtors' obligations to PNB on Renewal Note 1. (Adv. Dk. No. 14, Ex. A - Affidavit of S. Townsend).

7. On March 7, 2006, the Debtors sold the Riverwalk Property to David Briggs, Jr. and Carolyn Briggs for $2,000,000.00. (Adv. Dk. No. 14, Ex. 11).

8. PNB received from Mahony Title Services, LLC, ("Mahony Title") the balance due on the Debtors' obligations to PNB on Renewal Note 1 from the proceeds of the sale of Riverwalk Property; however, neither the Debtors nor Mahony Title remitted to PNB the balance due on Renewal Note 2. (Adv. Dk. No. 14, Ex. 14).

9. At the time of the sale of the Riverwalk Property, the balance due PNB on Renewal Note 2 was $313,117.50, and that balance remains unpaid. (Adv. Dk. No. 14, Ex. 14).

10. On July 24, 2006, PNB filed a suit on Renewal Note 2 with the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana (the "Litigation"). (Adv. Dk. No. 14, Ex. 12).

11. On September 13, 2006, the Debtors were arrested by the St. Tammany Sheriff's Office and released that same day. (Adv. Dk. No. 14, Ex. 13).

12. On November 2, 2006, the Debtors executed a consent judgment (the "Consent Judgment") in favor of PNB in the Litigation, in the principal amount of $313,117.50, representing the principal balance due on Renewal Note 2, together with interest, attorney's fees, and costs. (Adv. Dk. No. 14, Ex. 14).

13. The Debtors filed a voluntary petition for relief (the "Petition") under chapter 7 of the Bankruptcy Code on August 7, 2008. (08-02325-NPO, Dk. No. 1).

14. On August 29, 2008, the Debtors filed their Schedules and Statement of Financial Affairs. (Dk. No. 39).

15. The Debtors did not disclose or list any claims, unliquidated or otherwise, against PNB in their Schedule B or their Statement of Financial Affairs. (Dk. No. 39).

16. The Debtors' Schedule F listed PNB as an unsecured creditor and did not list PNB's claim as disputed, unliquidated, or contingent. (Dk. No. 39).

17. On March 3, 2009, PNB filed a Complaint to Determine Dischargeability of Debt (the "Complaint"). (Adv. Dk. No. 1).

18. On April 1, 2009, the Debtors filed the Defendant's Answer to the Complaint to Determine Dischargeability of Debt (11 U.S.C. §§ 523(a)(2), (4), and (6)) (the "Answer") (Adv. Dk. No. 4), denying certain allegations and affirmatively alleging that: (1) the payoff amount due to PNB

was obtained by the bank from the designated title company with whom the Debtors had no prior affiliation or business arrangement (Adv. Dk. No. 4, ¶ 11); (2) the Consent Judgment was obtained after the "willful, wanton, and negligent acts of PNB in utilizing their position in the community to compel the wrongful arrest and incarceration of the Debtors, without cause, and in disregard of the closing documents prepared by the bank" (Adv. Dk. No. 4, ¶ 16); and, (3) the resulting incarceration "diminished their financial position, caused them to incur substantial fees and costs as well as a reduced ability to continue and pursue their profession" (Adv. Dk. No. 4, ¶ 34). Included with the Answer, the Debtors filed a counterclaim (the "Counterclaim"), alleging negligence, fraud, and breach of fiduciary duty "in causing the Debtors' arrest and incarceration as a result of the bank's error in obtaining the correct pay-off of the outstanding debt owed to the bank" and breach of fiduciary duty and violation of the Privacy Act in PNB utilizing its "political and business position and influence with law enforcement . . . to cause the Debtors' arrest and incarceration as a result of the bank's error in obtaining the correct pay-off of outstanding debt owed to the bank." (Adv. Dk. No. 4). The Debtors requested relief from the "coerced" Consent Judgment, sanctions, damages, fees, and costs in an amount to deter future negligent acts. (Adv. Dk. No. 4).

19.     PNB filed its Reply of Whitney National Bank, Successor Via Merger with Parish National Bank to Counterclaim of Debtors (Adv. Dk. No. 12) on May 20, 2009, setting forth eighteen defenses, including lack of standing, lack of subject matter jurisdiction, failure to state a cause of action upon which relief may be granted, barred by prescription, estoppel, and failure to plead fraud with particularity.

20.     On May 22, 2009, PNB filed its Motion, Statement, and Memorandum. The Debtors filed no response or objection to these pleadings.

**Discussion**

**I.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, states that summary judgment is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Fed. R. Bankr. P. 7056(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

Thus, the moving party bears the initial responsibility of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53. Once the moving party has made its required showing, the nonmovant must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file designate specific facts showing a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. In any event, "[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th

Cir. 1985); *see also* Medlock v. Commission for Lawyer Discipline, 24 S.W.3d 865, 870 (C.A. Tex. 2000).

### II. Debtors Lack Standing to Pursue Their Counterclaim

Pursuant to 11 U.S.C. § 541(a)(1),[3] property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The term "all legal or equitable interests" has been broadly defined to include causes of action as bestowed by either federal or state law, in which the debtor has an interest, including other legal claims that could be prosecuted for the benefit of the estate. *See* Matter of Educators Group Health Trust, 25 F.3d 1281, 1283-84 (5th Cir. 1994); S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.), 817 F.2d 1142, 1149 (5th Cir. 1987); Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1274 (5th Cir. 1983). Thus, all causes of action belonging to the debtor at the commencement of the bankruptcy case vest in the bankruptcy estate upon the filing of the bankruptcy petition. Kane v. Nat'l Union Fire Ins. Co., 535 F.3d 380, 385 (5th Cir. 2008) (internal citations omitted). In a chapter 7 case, the trustee has the exclusive capacity to assert or prosecute a cause of action belonging to the estate once the bankruptcy petition has been filed. 11 U.S.C. § 323; Bankruptcy Rule 6009; Kane, 535 F.3d at 385; In re James, 210 B.R. 276 (Bankr. S.D. Miss. 1997); In re New Era, Inc., 135 F.3d 1206, 1209 (7th Cir. 1998) (a chapter 7 trustee has the exclusive right to represent the debtor in court); In re Educators Group Health Trust, 25 F.3d at 1284 (citing In re S.I. Acquisition, Inc., 817 F.2d at 1153-54). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is

---

[3] Hereinafter all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

abandoned" by the trustee pursuant to § 554. Kane, 535 F.3d at 385 (citing Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004); § 554; 5 Collier on Bankruptcy §§ 541.04; 541.08). Section 554 allows a trustee, after notice and a hearing, to abandon property of the estate that is burdensome or of inconsequential value to the estate. § 554(a). Courts in the Fifth Circuit, however, have held that an asset must be scheduled before it can be abandoned. *See* In re McLain, 516 F.3d 301, 315 (5th Cir. 2008) (citing Cusano v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001); Hutchins v. IRS, 67 F.3d 40, 43 (3rd. Cir. 1995); Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991)); Kane, 535 F.3d at 385; Lawrence v. Jackson Mack Sales, Inc., 837 F. Supp. 771, 780 (S.D. Miss. 1992); Kagan v. Swider, 2000WL 158329, *4 (E.D. La. 2000); In re Lawley, 2006 WL 2090209 (Bankr. S.D. Tex. 2006)(internal citations omitted).

It is undisputed that the claims asserted in the Counterclaim arose out of the Debtors' arrest and incarceration on September 13, 2006, prior to the Debtors' filing the Petition. Accordingly, the Debtors' claims became an asset of the estate on August 7, 2008, the date in which they filed the Petition. It is also undisputed that the Debtor's claims are not scheduled. (Dk. No. 39). Thus, pursuant to §§ 323 and 541(a)(1), the Debtors' claims are property of the estate and, as such, the trustee[4] has exclusive standing to pursue the claims against PNB. Since the Trustee has not abandoned the claims, this Court holds that the Debtors have no standing to pursue the Counterclaim against PNB.

---

[4] Alex B. Gates was appointed as the chapter 7 trustee in this case. He shall be referred to herein as "Trustee."

**Conclusion**

Through its Motion, supported by affidavits, PNB has made the requisite showing to demonstrate that the Debtors lack standing to pursue their Counterclaim against PNB. The Debtors have failed to "set out specific facts showing a genuine issue for trial" pursuant to Fed. R. Bankr. P. 7056(e)(2). Therefore, the Court finds that the Debtors lack standing to pursue the Counterclaim against PNB. Having made this determination, the Court need not discuss the other arguments presented by PNB. Accordingly, the Motion should be granted.

A separate final judgment will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

IT IS, THEREFORE, ORDERED that the Motion hereby is granted.

SO ORDERED.